James A. McDevitt
United States Attorney
Eastern District of Washington
James A. Goeke
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| Plaintiff, ) | |
| vs. ) | |
| $8,280.00 U.S. CURRENCY, ) | Verified Complaint for Forfeiture In Rem |
| 2008 MERCEDES-BENZ S550, ) WASHINGTON LICENSE PLATE 455 ) XHZ, VIN: WDDNG86X98A180613, ) | |
| 2008 CHEVROLET CORVETTE, ) WASHINGTON LICENSE PLATE 407 ) YDA, VIN: 1G1YY36W885119060, ) | |
| MISCELLANEOUS ITEMS OF ) JEWELRY, ) | |
| Defendants. ) | |

Plaintiff, United States of America, by its attorneys, James A. McDevitt, United States Attorney for the Eastern District of Washington, and James A. Goeke, Assistant U.S. Attorney, brings this complaint and alleges as follows in accordance with Supplemental Rule G(2) of the Federal Rules of Civil Procedure:

## I. NATURE OF THE ACTION

1.     This is an action to forfeit and condemn to the use and benefit of the United States of America the above-captioned Defendant property seized by the Federal Bureau of Investigation(FBI) and/or the Internal Revenue Service-Criminal Investigation (IRS-CI) for violations of 18 U.S.C. §§ 1341 and 1343(Mail and Wire Fraud) and 18 U.S.C. §§ 1956 and 1957 (Money Laundering).

Verified Complaint for Forfeiture In Rem - 1
P00907dm.jga.wpd

## II.  THE DEFENDANT(S) IN REM

2.    The Defendant property consists of the following property:

-$8,280.00 U.S. Currency, seized by FBI from Doris and Dennis Nelson, on or about April 6, 2010, in Colbert, Washington, presently in the custody of the United States Marshals Service;

-2008 Mercedes-Benz S550, Washington License Plate 455 XHZ, VIN: WDDNG86X98A180613, seized by FBI from Doris and Dennis Nelson, on or about April 6, 2010, in Colbert, Washington, presently in the custody of the United States Marshals Service;

-2008 Chevrolet Corvette, Washington License Plate 407 YDA, VIN: 1G1YY36W885119060, seized by IRS-CI from Doris and Dennis Nelson, on or about April 6, 2010, in Colbert, Washington, presently in the custody of the Internal Revenue Service and,

-Miscellaneous Items of Jewelry, seized by the FBI from Doris and Dennis Nelson, on or about April 6, 2010, in Colbert, Washington, further described in Attachments "A" and "B", attached hereto and incorporated herein by this reference, presently in the custody of the United States Marshals Service, or the Internal Revenue Service.

## III.  JURISDICTION AND VENUE

3.    Plaintiff brings this action in rem in its own right to forfeit and condemn the Defendant property.  This Court has jurisdiction over an action commenced by the United States under 28 U.S.C. § 1345, and over an action for forfeiture under 28 U.S.C. § 1355(a).

4.    This Court has *in rem* jurisdiction over the defendant property under 28 U.S.C. § 1355(b).  Upon the filing of this complaint, the plaintiff requests that the Court issue an arrest warrant *in rem* pursuant to Supplemental Rule G(3)(b), which the plaintiff will execute upon the property pursuant to 28 U.S.C. § 1355(d) and Supplemental Rule G(3)(c).

5.    Venue is proper in this district pursuant to 28 U.S.C. § 1395 because the action accrued in this district, the Defendant is found in this district, and the property is located in this district and, 28 U.S.C. § 1355(b)(1), because the acts or omissions giving rise to the forfeiture occurred in this district.

Verified Complaint for Forfeiture In Rem - 2
P00907dm.jga.wpd

1

## IV.  BASIS FOR FORFEITURE

2

6.    Plaintiff repeats and realleges each and every allegation set forth in

3

Paragraphs 1 through 5 above.

4

The Defendant property is subject to forfeiture pursuant to:

5

1) 18 U.S.C. § 981(a)(1)(C) because it constitutes or is derived from

6

proceeds traceable to a violation(s) of 18 U.S.C. § 1341(mail fraud) and/or 18

7

U.S.C. § 1343 (wire fraud), which are offenses constituting "specified unlawful

8

activity" as defined in 18 U.S.C. § 1956(c)(7).

9

2) 18 U.S.C. § 981(a)(1)(A) because it constitutes property involved in a

10

transaction or an attempted transaction in violation of 18 U.S.C. §§ 1956 and 1957,

11

or is property traceable to such property.

12

As a result of the foregoing, the Defendant property is liable to

13

condemnation and forfeiture to the United States for its use, in accordance with the

14

provisions of 18 U.S.C. § 981.

15

## V.  FACTS

16

7.    Beginning in 2009, the Internal Revenue Service-Criminal

17

Investigation(IRS-CI) and the Federal Bureau of Investigation (FBI) initiated an

18

investigation regarding the criminal activities of DORIS E. NELSON and others

19

relative to an investment/Ponzi scheme.  DORIS E. NELSON engaged in a scheme

20

to knowingly and willfully defraud investors by making false pretenses,

21

representations, and promises to obtain more than $100,000,000 in investor funds

22

from more than 450 investors in the United States and Canada.  DORIS E.

23

NELSON promised high rates of returns on her investments, falsely and

24

fraudulently led her investors to believe that investor returns were and would be

25

paid through the legitimate profits of her business, and that investor funds would

26

be used to generate that profit, not as a false substitute for it.  DORIS E. NELSON

27

accomplished her fraudulent scheme utilizing the United States Postal Service and

28

interstate wire communications, in violation of 18 U.S.C. §§ 1341 (mail fraud) and

1343 (wire fraud).  DORIS E. NELSON also engaged in financial transactions with the proceeds of her scheme in violation of 18 U.S.C. §§ 1956 (money laundering) and 1957 (transactional money laundering).

Little Loan Shoppe is the name of a payday/short-term lending business owned and operated by DORIS E. NELSON.  DORIS E. NELSON has registered the name "Little Loan Shoppe" as a trademark, and conducts business primarily using this name.  Little Loan Shoppe's primary place of business is currently located at 1801 West Broadway Avenue, Spokane, Washington.

DORIS E. NELSON is a self-described entrepreneur who has owned and operated Little Loan Shoppe since approximately 1997, conducting business in the United States and Canada.  Little Loan Shoppe offered payday/short-term loans initially through storefront offices, and later via the internet.  DORIS E. NELSON currently resides at 106 East Gem Lane, in Colbert, Washington.

According to information obtained from witnesses in this investigation, DORIS E. NELSON started her business in Canada in approximately August of 1997, when she created Little Loan Shoppe Ltd., a British Columbia company.  Initially, DORIS E. NELSON operated solely in Canada.  In or about 2001, DORIS E. NELSON moved to Spokane, Washington, where she relocated her business operations.  Also in 2001, DORIS E. NELSON began to offer payday/short-term loans to United States customers.  In or about 2004, DORIS E. NELSON began to offer payday/short-term loans to Canadian customers via the internet.  In 2006, DORIS E. NELSON closed the last of her storefront locations and began offering loans via the internet to United States customers.  DORIS E. NELSON continues to conduct her internet-based payday/short-term lending business, currently operating out of the offices located at the Broadway location in Spokane, Washington.

Based on information provided by witnesses and obtained through a review of business and financial records, DORIS E. NELSON used more than fifty business entities registered in various jurisdictions, including but not limited to: Washington, Nevada, Utah, and British Columbia, Canada to conduct her payday/short-term lending business and to conduct her investment/Ponzi scheme. Most of these business entities are organized as Limited Liability Companies (LLC), including, but not limited to: Little Loan Shoppe Ltd., Little Loan Shoppe America LLC; Team Spirit America, LLC; 639504 BC, Ltd; Little Loan Shoppe Canada, LLC; Global Edge Marketing, LLC; 0738106 BC, Ltd.; 0738116 BC, Ltd.; 0738126 BC, Ltd.; LLS America, LLC; LLS-A, LLC (WA); Pacific LLS, LLC; Atlantic LLS, LLC; Eastern LLS, LLC;  Central LLS, LLC; LLS-A, LLC (NV); LLS-NW, LLC; LLS-U.S. LLC; 360 Global Northwest Networks LLC; 360 Northwest Networks, LLC; and 360 Northwest Telecom, LLC.  These entities are but a few of the entities utilized by DORIS E. NELSON.

According to information obtained from witnesses and records reviewed in this investigation, Team Spirit America, LLC (TSA) is a company owned by DORIS E. NELSON.  TSA is the business entity that operates DORIS E. NELSON's payday/short-term lending business under the name of Little Loan Shoppe.

According to witnesses and records reviewed in this investigation, Global Edge Marketing, LLC, (GEM) is a Washington company owned by DORIS E. NELSON's husband, Dennis L. Nelson, Jr.  DORIS E. NELSON set up GEM, in part using investor funds, as a payday/short term loan customer lead development company.  DORIS E. NELSON told investors that GEM was created to save Little Loan Shoppe expenses related to purchasing customer leads.

According to information obtained from witnesses in this investigation and a review of records, since approximately 1999, DORIS E. NELSON has issued what she called "promissory notes" to individuals who loaned her money for use in her

payday/short-term lending business. DORIS E. NELSON's "promissory notes" detail the amounts, parties, and terms of the investments she received. Through these "promissory notes," DORIS E. NELSON has obtained in excess of $100,000,000 from more than 450 investors, purportedly to fund additional payday/short-term loans and to expand her business operations. In these "promissory notes," DORIS E. NELSON typically promised her investors annual returns of 40 percent to 60 percent. These returns were often to be paid to investors via post-dated interest checks, mailed to investors at the time of their investment, which were to be negotiated on the check date. Investors usually sent their funds to DORIS E. NELSON by mail or wire transfer. DORIS E. NELSON communicated with her investors in person, by telephone, by email and regular mail. The investors resided in the United States, Canada, Mexico, and other international locations. DORIS E. NELSON claimed to her investors that her payday/short-term lending business generated huge profits, in one case claiming up to 1,000 percent interest, and that these profits would be used to pay investors exorbitant returns. In reality, DORIS E. NELSON appears to have used the vast majority of investor funds to pay interest returns to earlier investors.

According to information obtained from witnesses in this investigation, most of DORIS E. NELSON's investors learned about the investment opportunity from friends or family members that had previously invested. DORIS E. NELSON told investors various falsities, including, but not limited to the following: (a) her payday lending business continued to grow and was financially sound; (b) investments in her company were more secure than a bank; (c) she had a secure bank account for investor funds; (d) the investments were covered by a life insurance policy in the event of DORIS E. NELSON's death; (e) the investment was safe and risk-free; (f) investors could retrieve their investments within a short time period if needed; (g) the invested funds were completely collateralized by

payday/short term loans to customers; and (h) her payday lending business was recession-proof.

According to investors, by October 2008, DORIS E. NELSON stopped paying investors according to the terms of their "promissory notes". Initially Nelson offered some investors a reduced interest rate payment of 10%. Over time, DORIS E. NELSON failed to make even the 10% payments, and all payments ceased by March 2009.

According to witnesses and court records, in July 2009, shortly after the interest payments ceased, some of DORIS E. NELSON's investors filed an involuntary petition for Chapter 11 bankruptcy against LLS-A, LLC, one of DORIS E. NELSON's entities related to her payday lending business. Also in July 2009, another of DORIS E. NELSON's entities, LLS America, LLC, petitioned for its own Chapter 11 bankruptcy. A review of bankruptcy records shows that these two bankruptcy cases have been consolidated into a single case currently pending in the Eastern District of Washington.

Multiple law enforcement and regulatory agencies have investigated or are investigating DORIS E. NELSON, Little Loan Shoppe, and related entities. These include FBI, IRS-CI, United States Securities and Exchange Commission (SEC), State of Washington Department of Financial Institutions, Securities Division (DFI), and the British Columbia Securities Commission ("BCSC")Department of Financial Institutions ("DFI") Investigation

Investigators representing the law enforcement and regulatory agencies examining DORIS E. NELSON, Little Loan Shoppe, and related entities have contacted numerous investors. These investors have provided statements and documentation related to their investments with DORIS E. NELSON. This documentation includes emails and other correspondence sent by DORIS E. NELSON to investors that demonstrate DORIS E. NELSON's role in the Little Loan Shoppe and her statements to investors. These emails are included in the

Verified Complaint for Forfeiture In Rem - 7

P00907dm.jga.wpd

following chronology.  The chronology also lists additional important events related to DORIS E. NELSON's statements to and dealings with investors.

a)    2006.  Sometime in or about 2006, Paul Cooper, an investor who first started investing money with DORIS E. NELSON in 1996, sent an email to other investors regarding DORIS E. NELSON.  Mr. Cooper described statements made by DORIS E. NELSON to him regarding investments made with her payday/short-term lending business.  According to Mr. Cooper, DORIS E. NELSON had claimed that she had a life insurance policy that would pay back all loans in the event of her death, and that there was very little risk for the investments since all invested funds were covered abundantly by her business profits.

b)    December 15, 2006.  In an email to investors, DORIS E. NELSON stated that "[a]t this time there is no need for additional funds.  I am sorry that we were unable to accommodate several who had wanted to put more in but who were unable to liquidate before the deadline.  We currently have plenty of cash on hand but will keep everyone posted if another opportunity develops in the future."  DORIS E. NELSON also explained that "'Little Loan Shoppe' recently bought the building we were renting in Spokane, Washington.  We are currently in the middle of an extensive remodeling project."

c)    February 26, 2008.  In an email to investors, DORIS E. NELSON reported that "last year we experienced substantial growth in an otherwise declining economy.  In short, we defied financial gravity.  We continue to forecast . . . an explosion of profit."  DORIS E. NELSON also announced the creation of another company named D&C Lead Marketing ("D&C"), declaring "I have taken a bold step forward by converting what used to be a massive expense into pure profit.  As you are aware, The Little Loan Shoppe used to purchase leads at a rate of up to sixty-five dollars each.  With the creation of D&C Lead Marketing, we

have turned the financial tables, by creating a commercial lead company to generate our own leads."

d)    March 11, 2008.  In an email to investors, DORIS E. NELSON stated that "[d]ue to recent growth as well as the advent of the newly created lead generating company D&C Lead Marketing we are as busy as ever!  This substantial growth means that we are ready to review all possible means of financial contribution.  If you are interested in making any additional financial contributions please feel free to contact me."

e)    March 12, 2008.   In a message to investors posted on her website, DORIS E. NELSON described the formation of four new companies: D&C; 360 Northwest Telecom ("360"), (purportedly selling telecommunications products); an unnamed collections company; and an unnamed computer programming and software company.  Referring to these new companies, DORIS E. NELSON stated that "I have not bitten off more than I can chew.  These companies were created to support the Little Loan Shoppe however they are all independent entities capable of standing alone without assistance from the Little Loan Shoppe."  Also, while describing D&C, DORIS E. NELSON indicated that this company was in the process of changing names.

f)    May 6, 2008.  DORIS E. NELSON emailed investors, informing them of a new business venture named Global Edge Marketing ("GEM") a lead-generating company, resulting in "Little Loan Shoppe [being] able to generate its own organic leads in-house and in turn significantly increase the amount of loans that [it] funds per day.  Furthermore, through Global Edge, we will be able to sell our remaining surplus leads off at a premium to other online markets."  DORIS E. NELSON also noted a slowing U.S. economy and possible recession and tells investors "I wanted to take some time to reassure you that our industry is thriving."  She claimed that the economic situation actually benefited Little Loan Shoppe by increasing loans to higher income customers.  She predicted that "Little Loan

Verified Complaint for Forfeiture In Rem - 9

P00907dm.jga.wpd

Shoppe will continue to watch the economy as well as our consumer data to assure that we thrive through any changes in market conditions."  In the same email, DORIS E. NELSON indicated that "I am very excited about the upcoming explosion in growth for the Little Loan Shoppe.  That being said I have recently been contacted by others who are interested in investment opportunities with us due to our increase in growth.  So I have decided for a short period that I will be excepting [sic] new investments."

g)    May 7, 2008.  In an email to investors, DORIS E. NELSON announced a "window to invest," explaining that the opportunity "is due to the anticipated increase in volume of loans due to the launch of Global Edge Marketing."  She continued, "I cannot determine when this opportunity for both new and existing investors will end . . . this window of opportunity will probably not be open again due to the expected surplus of income from Global Edge Marketing."  DORIS E. NELSON also encouraged investors to reinvest their interest payments into additional investment with DORIS E. NELSON and concluded by encouraging investors to contact her by email or telephone with any questions.

h)    May 23, 2008.  DORIS E. NELSON, in an email to investors, stated that "[t]he creation of Global Edge Marketing is solely to give the Little Loan Shoppe all of its support and to help cut the marketing costs and increase the quality and amount of customer[s] that Little Loan Shoppe accepts per day.  That being said, the Little Loan Shoppe is currently looking for investments to help with this huge increase in consumer growth from Global Edge Marketing.  If you or anyone that you know is interested in this investments opportunity please contact me."

i)    July 24, 2008. In a letter to investors, DORIS E. NELSON described a "new massive marketing campaign" that she predicted would result in a large number of new customers and related payday/short-term loans.  DORIS E.

Verified Complaint for Forfeiture In Rem - 10

P00907dm.jga.wpd

NELSON then advised that "[t]his increased number of loans will change us from a medium-sized loan company to one of the largest loan companies."  Later in the same letter, DORIS E. NELSON stated that "[c]urrently, we offer investors the option of a ten year plan in which they are paid semi-annually and a five year plan in which they are paid quarterly.  Each plan is at 40% interest.  We are now adding a new investment option.  Using this option, investors will receive a payment every twenty months at an interest rate of 60%!  We strongly encourage you to take advantage of this new investment plan because doing so would be more beneficial for each of us. The new plan offers you the chance to get a higher interest rate and enables me to maximize the efficiency of your investment and procure a higher profit. . . . Again, at this time we will be accepting additional investments for Little Loan Shoppe.  Also, if anybody is interested in reinvesting their previously issued payments for the months of July, August & September this would be the time to do so."

j)    October 3, 2008.  In a meeting with BCSC investigators, DORIS E. NELSON stated that she did not use funds from newer investors to make interest payments to older investors, claiming instead that interest payments were funded by payday/short-term lending profits.   DORIS E. NELSON also declared that all funds raised from investors were used to fund payday/short-term loans.

k)    October 7, 2008.  BCSC directed DORIS E. NELSON to refrain from distributing further promissory notes or other securities.

l)    October 7, 2008.  In an email to investors, DORIS E. NELSON claimed that changes to U.S. lending laws had "dramatically reduced our profits . . . . As a result . . . we are not making the profits which previously allowed us to pay generous interest rates to our supporters. . . . We take our commitments and financial responsibilities very serious [sic] and assure you that your funds are not being used for anything inappropriate or for any unrelated ventures."  DORIS E. NELSON announced that in the future, investors' interest payments would be

Verified Complaint for Forfeiture In Rem - 11

limited to 10% annual interest, despite the amounts promised in their "promissory notes." She also instructed investors to return all post-dated interest checks to be replaced by checks calculated at the lower interest rate.

m)    October 21, 2008. In an email to investors, DORIS E. NELSON reiterated that investor payments would be limited to 10% annual interest on all outstanding notes. She stated that "once we return to a stable and positive financial situation we will endeavor to return to the previous payments." DORIS E. NELSON also stated that "[a] small number of our supporters have asked about the possibility of entering into early buyouts. At this point, we are not able to support these requests."

n)    December 30, 2008. In an email to investors DORIS E. NELSON asserted that "I want to assure you that I am doing everything possible to keep your principal safe. . . . Little Loan Shoppe does not require any additional capital to meet the obligations of producing more loans. We are creating loans from our own revenue. We are making a profit each month which is going back out into new loans and covering our expenses. Also with the revenue that is being generated the company has been making payments to investors. As well as paying all bills and funding new loans. This demonstrates the long term viability of the company from an operational and financial standpoint. . . . I am aware that you are concerned but I want you all to be assured that I myself and my staff are doing everything to make this a very strong and profitable company."

o)    February 9, 2009. In an email to investors, DORIS E. NELSON told investors to stop contacting her and her staff with questions about their investments. DORIS E. NELSON stated that these numerous and constant inquiries were a distraction to her and the business and that she "will no longer be directly available to investors." DORIS E. NELSON also announced that investor accounts would be reviewed during February and March 2009, and that "regular payments will resume . . . if a payment is truly due."

Verified Complaint for Forfeiture In Rem - 12

p)    March 14, 2009.  DORIS E. NELSON emailed investors that the review of investor accounts was behind schedule with a new target date of April 15, 2009.

q)    March 2009.  Ralph Gamble, a former employee of DORIS E. NELSON who served as TSA's Chief Operating Officer from March through October 2009, advised that DORIS E. NELSON and Chris Foster traveled to Florida to meet with three investors in an attempt to obtain additional funds from these investors.  These three investors did not invest additional funds, but advised DORIS E. NELSON to step down as CEO and hire a professional manager and CEO.

r)    March 31, 2009.   In a letter to investors, repeated in an April 10, 2009 email, investors were informed that DORIS E. NELSON stepped down as Chief Executive Officer and was replaced by Chris Foster, DORIS E. NELSON's son.  The letter, signed by Mr. Foster, announced a six-month moratorium on all investor payments.  Mr. Foster claimed the moratorium was necessary because the previous review of investor accounts showed "unsubstantiated debts and overpayments," and that all investor accounts would be audited by a third party accounting firm.  Mr. Foster stated that "[i]nvestors will not initiate contact with staff during this period - including by email, telephone, or person," and that only written communication would be accepted.  Mr. Foster closed the letter by stating "[t]his is not to be construed as an attempt to avert financial obligations.  However, it is critical that no further funds are paid to accounts which have either been paid in full, or are based on unsubstantiated debt."

s)    June 8, 2009.  According to his December 3, 2009 deposition filed in bankruptcy court, Ralph Gamble is appointed CEO.

t)    September 15, 2009.  Ralph Gamble, then CEO of TSA, sent an email to corporate counsel for TSA.  In that email Mr. Gamble stated that he had advised DORIS E. NELSON that the company would no longer be able to pay her an

Verified Complaint for Forfeiture In Rem - 13

P00907dm.jga.wpd

owner's distribution because Little Loan Shoppe entities were in a "negative equity position." Later in the same email Mr. Gamble stated that "[DORIS E. NELSON] is adamant that payment of the owner's distribution continue from TSA in the amount of $5,600 bi-weekly."

u)      October 22, 2009. According to his December 3, 2009 deposition filed in bankruptcy court, Ralph Gamble was terminated as CEO, at which time DORIS E. NELSON again took control of Little Loan Shoppe and its related entities.

Special Agents of IRS-CI and FBI have examined bank account information for Little Loan Shoppe and related entities. These bank records show numerous deposits, via check and wire transfers from DORIS E. NELSON's investors being received into bank accounts in the United States and Canada. The bank records likewise document payments being made to investors via wire transfer and checks. These transactions are consistent with the statements made by investors and other witnesses in this investigation.

Special Agents of IRS-CI and FBI have also examined business records provided by Eric R. Olsen, a former employee of DORIS E. NELSON. Eric R. Olsen was employed with DORIS E. NELSON between December 2007 and November 2009. Mr. Olsen was hired as a statistician, and served as TSA's Chief Financial Officer from June 2009 through November 2009. TSA's business records provided by Mr. Olson document investor payments and receipts consistent with statements given by investors and other witnesses in this investigation. Also, these records document the extent of the investor funds obtained by DORIS E. NELSON through "promissory notes." According to these records, between 1999 and 2008 DORIS E. NELSON received in excess of $100,000,000 from investors.

On or about December 15, 2006 DORIS E. NELSON told investors that Little Loan Shoppe had recently purchased 1801 West Broadway, in Spokane,

Verified Complaint for Forfeiture In Rem - 14

P00907dm.jga.wpd

Washington.  According to the Spokane County Assessor's Office, 1801 West Broadway was purchased on September 14, 2006 by D&D and Associates, LLC ("D&D").  Nevada Secretary of State records indicate that D&D was organized on August 1, 2006, with Dennis L. Nelson, Jr. as its managing member.

On April 29, 2009, a civil complaint was filed by the previous owner of 1801 West Broadway and others against DORIS E. NELSON, D&D, and other DORIS E. NELSON entities.  This complaint details the sale of 1801 W. Broadway to D&D in September 14, 2006 for a total sales price of $1,050,000. According to the complaint, the actual recorded price was $650,000, with the remaining $400,000 being paid in the form of a promissory note made to seller by one of the Little Loan Shoppe entities.  Regarding this transaction, the previous owner of the property describes that he "was concerned about the security for what amounted to a loan in the amount of $400,000 as part of the sale of the Property." The previous owner "asked for a note and a deed of trust for the Property for security, but was told by [DORIS E. NELSON] in her capacity as a representative of . . . D&D, that she preferred to secure the difference between the recorded sales price and the actual sales price ($400,000) through a promissory note and post-dated checks from her payday loan companies."

<u>2008 CHEVROLET CORVETTE CONVERTIBLE, VIN: 1G1YY36W885119060</u>
<u>WASHINGTON LICENSE PLATE: 848 XSY</u>

On or about March 15, 2008, Dennis L. Nelson, Jr., DORIS E. NELSON's husband, purchased a 2008 Chevrolet Corvette Convertible, VIN: 1G1YY36W885119060, Washington license plate: 848XSY from Dave Smith Motors in Kellogg, Idaho.  Examination of documents obtained from Dave Smith Motors in Kellogg, Idaho show that the vehicle was purchased for a total price of $66,408.76 and paid in full with check number 5027 in the amount of $36,408.75 signed by Dennis L. Nelson Jr., drawn on Wells Fargo Bank checking account number ******9221, titled in the name of Dennis L. Nelson Jr. and DORIS E. NELSON; and check number 10458 in the amount of $30,000.00 signed by

Verified Complaint for Forfeiture <u>In</u> <u>Rem</u> - 15

DORIS E. NELSON, drawn on Wells Fargo Bank checking account number ******3582, titled in the name of Little Loan Shoppe America, LLC Operating Account.

An examination of Wells Fargo Bank records show that checking account number ******3582, the Little Loan Shoppe America, LLC Operating Account, was opened on August 31, 2005 by DORIS E. NELSON.  An examination of bank statements for account number ******3582 show that this account frequently received large deposits from individuals and entities believed to be, based on the investigation to date, defrauded investors in DORIS E. NELSON's payday/short-term lending business.  Bank records show that in the 30 days prior to check #10458 being used to purchase the Corvette at least $1,240,660 was deposited from investors into account ******3582.

2008 MERCEDES-BENZ S550, VIN: WDDNG86X98A180613, WASHINGTON LICENSE PLATE: 455XHZ

On or about November 9, 2007, Dennis L. Nelson, Jr., DORIS E. NELSON's husband, purchased a 2008 Mercedes-Benz S550, VIN: WDDNG86X98A180613, Washington license plate 455XHZ from Mercedes Benz of Spokane in Spokane, Washington.  DORIS E. NELSON has been observed by Special Agents of FBI driving the Mercedes.  Examination of documents obtained from Mercedes Benz of Spokane show that the Mercedes was purchased for a total price of $112,060.63 and paid in full with a $29,480 trade-in allowance; check number 2005 in the amount of $50,000, dated November 9, 2007, signed by DORIS E. NELSON and drawn on Wells Fargo Bank checking account number ******9221, titled in the name of Dennis L. Nelson Jr. and DORIS E. NELSON; and check number 10990 in the amount of $32,580.63, dated November 9, 2007, signed by DORIS E. NELSON and drawn on Wells Fargo Bank checking account number ******3582, titled in the name of Little Loan Shoppe America, LLC Operating Account.

An examination of Wells Fargo Bank records show that checking account number ******3582, the Little Loan Shoppe America, LLC Operating Account,

Verified Complaint for Forfeiture In Rem - 16

P00907dm.jga.wpd

was opened on August 31, 2005 by DORIS E. NELSON.  An examination of bank statements for account number ******3582 show that this account frequently received large amount funds from individuals and entities believed to be, based on the investigation to date, defrauded investors in DORIS E. NELSON's payday/short-term lending business.  For example, in the eight days prior to the purchase of the Mercedes, November 01, 2007 to November 8, 2007, $1,118,932.58 was deposited into account number ******3582 via wire transfer from four known investors.

A review of bankruptcy records shows that each of these four investors is listed as a creditor in the pending bankruptcy case.  Also, these investors have provided statements to DFI investigators and described their investments with DORIS E. NELSON in the same manner as the facts and circumstances detailed above.  Analysis of these deposits and withdrawal items shows that check number 10990 in the amount of $32,580.63, dated November 9, 2007, payable to Mercedes Benz of Spokane, and signed by DORIS E. NELSON utilized funds that had been received from DORIS E. NELSON's investors.

$8,280.00 U.S. CURRENCY AND MISCELLANEOUS JEWELRY

Based upon investigation, it is believed that since 1997, DORIS E. NELSON's sole source of income has been derived from her scheme to defraud as described herein.  The Defendant currency and jewelry were discovered pursuant to the execution of a federal search warrant at Nelson's residence on April 6, 2010. Some items of jewelry were found with receipts which provided information regarding the purchase date and where the items were purchased.   Prior to the search warrant's execution, law enforcement was not aware of these assets, and they were seized as evidence of proceeds of her fraudulent scheme.  Based upon probable cause to believe the assets are forfeitable, FBI and IRS initiated administrative forfeiture proceedings against the currency and jewelry.

# VI.  <u>CONCLUSION</u>

Based on the foregoing information I have reason to believe that DORIS E. NELSON engaged in a scheme to knowingly and willingly defraud investors by making false representations, statements and promises.  DORIS E. NELSON accomplished her fraudulent scheme utilizing the United States Postal Service and interstate wire communications, in violation of 18 U.S.C. §§ 1341 (mail fraud), 1343 (wire fraud).  DORIS E. NELSON also engaged in financial transactions with the proceeds of her scheme in violation of 18 U.S.C. §§ 1956 (money laundering), and 1957 (transactional money laundering).

Further, I have probable cause to believe that the Defendant property is (a) property involved in a violation of 18 U.S.C. §§ 1956 (money laundering) or 1957 (transactional money laundering), or traceable to such property; or (b) property constituting or derived from proceeds traceable to a violation(s) of 18 U.S.C. §§ 1341 or 1343, and, as such the Defendant property is subject to forfeiture pursuant to 18 U.S.C. § 981(a)(1)(A) or (C).

# VII.  <u>CLAIM FOR RELIEF</u>

WHEREFORE, the plaintiff requests that the Court issue a warrant and summons for the arrest and seizure of the defendant property; that notice of this action be given to all persons who reasonably appear to be potential claimants of interests in the property; that the defendant property be forfeited and condemned to the United States of America; that the plaintiff be awarded its costs and

1  disbursements in this action; and for such other and further relief as this Court

2  deems proper and just.

3        DATED this _____ day of September, 2010.

4
                        James A. McDevitt
5                        United States Attorney

6

7                        James A. Goeke
                        Assistant United States Attorney

8                        **VERIFICATION**

9        I, Michael S. Payne, hereby verify and declare under penalty of perjury that

10  I am a Special Agent, with the Internal Revenue Service-Criminal Investigation,

11  Post of Duty, in Spokane, Washington, that I have read the foregoing Verified

12  Complaint in rem and know the contents thereof, and that the matters contained in

13  the Verified Complaint are true to my own knowledge, except that those matters

14  herein stated to be alleged on information and belief and as to those matters I

15  believe them to be true.

16        The sources of my knowledge and information and the grounds of my belief

17  are the official files and records of the United States, information supplied to me

18  by other law enforcement officers, as well as my investigation of this case,

19  together with others, as a Special Agent.

20        I hereby verify and declare under penalty of perjury that the foregoing

21  information is true and correct.

22        DATED this _____ day of September, 2010.

23

24

25
                        Michael S. Payne, Special Agent
26                        Internal Revenue Service-
27                        Criminal Investigation

28

Verified Complaint for Forfeiture In Rem - 19
P00907dm jga (3).wpd